# Exhibit 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into this 18th day of October, 2016, by and among (1) Plaintiff, for herself and on behalf of the Settlement Class, and (2) ENDO HEALTH SOLUTIONS INC., ENDO PHARMACEUTICALS INC., GENERICS INTERNATIONAL (US PARENT), INC., (sued as GENERICS INTERNATIONAL (US PARENT), INC., d/b/a Qualitest Pharmaceuticals, GENERICS BIDCO I, LLC, GENERICS BIDCO II, LLC, GENERICS INTERNATIONAL (US HOLDCO), INC., and GENERICS INTERNATIONAL (US MIDCO), INC.), GENERICS INTERNATIONAL (US), INC., and VINTAGE PHARMACEUTICALS, LLC, ("Defendants," and, together with Plaintiff, the "Parties"), subject to preliminary and final Court approval as required by Rule 23 of the Federal Rules of Civil Procedure.[1]  The Parties hereby agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a Final Order and Judgment, all claims of the Settlement Class against Defendants in the action titled *Mahoney v. Endo Health Solutions, Inc., et al.*, S.D.N.Y. Case No. 15-cv-09841-DLC (the "Action") and all claims that could have been asserted on behalf of the Settlement Class in the Action, shall be settled and compromised upon the terms and conditions contained herein.

## I.     Recitals

1.     On December 17, 2015, Plaintiffs filed a putative class action complaint in the United States District Court for the Southern District of New York, alleging that Defendants sold Plaintiff and a specified class of persons multi-vitamin tablets with fluoride that

---

[1] The Complaint identifies GENERICS BIDCO I, LLC, GENERICS BIDCO II, LLC, GENERICS INTERNATIONAL (US HOLDCO), INC., and GENERICS INTERNATIONAL (US MIDCO), INC., as separate defendants.  However, those entities were merged into GENERICS INTERNATIONAL (US PARENT), INC. and no longer exist.

contained less than half of the fluoride ion represented on the label, and seeking monetary damages from the Defendants.

2.   On March 18, 2016, Plaintiff filed her First Amended Class Action Complaint.

3.   Also on March 18, 2016, the Court entered a Stipulated Protective Order relating to the production of documents and information, a HIPAA Qualified Protective Order, and a Stipulated Order Regarding the Inadvertent Disclosure of Privileged Information. The Parties also agreed to an electronic discovery protocol to facilitate the production of electronically-stored information ("ESI").

4.   On April 19, 2016, Defendants filed a Motion to Dismiss the First Amended Class Action Complaint, which the Court granted in part and denied in part on July 20, 2016, after being fully briefed by the Parties.

5.   Beginning in the summer of 2016, the Parties began settlement discussions, and agreed to mediate this matter before retired United States District Court Judge Barbara S. Jones. Immediately prior to mediation, the Parties provided to Judge Jones comprehensive mediation memoranda setting out in detail their legal and factual positions.

6.   Thereafter, the Parties participated in ongoing efforts to negotiate a resolution of this dispute, which lasted several months. Ultimately, Plaintiff and Defendants reached an agreement concerning the material provisions of a settlement including the amount of "Settlement Consideration." On August 18, 2016, Class Counsel and counsel for Defendants appeared before Judge Denise L. Cote and announced their agreement to settle this matter.

7.   The Parties agree to settle the Action with regard to Defendants and with respect to all Released Claims of the Settlement Class. The Parties intend this Agreement to bind

- 2 -

Plaintiff, Defendants, and all members of the Settlement Class who do not timely and properly request to be excluded from the Settlement.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.    <u>Definitions</u>

In addition to the terms defined at various points within this Agreement, the following Defined Terms apply throughout this Agreement:

8.    "Action" means *Mahoney v. Endo Health Solutions, Inc., et al.*, S.D.N.Y. Case No. 15-cv-09841-DLC.

9.    "Class Counsel" means:

BUCKNER + MILES
David M. Buckner, Esq.
Seth E. Miles, Esq.
Brett von Borke, Esq.
3350 Mary Street
Miami, FL  33133
Tel: (305) 964-8003

McCABE RABIN, P.A.
Ryon McCabe, Esq.
Robert Glass, Esq.
1601 Forum Place, Suite 505
West Palm Beach, FL 33401
Tel: (561) 659-7878

10.    "Class Period" means the period from October 31, 2007, through December 31, 2015.

11.    "Court" means the United States District Court for the Southern District of New York.

12.    "Defendants" means ENDO HEALTH SOLUTIONS INC., ENDO PHARMACEUTICALS INC., GENERICS INTERNATIONAL (US PARENT), INC. (sued as GENERICS INTERNATIONAL (US PARENT), INC., d/b/a Qualitest

Pharmaceuticals, GENERICS BIDCO I, LLC, GENERICS BIDCO II, LLC, GENERICS INTERNATIONAL (US HOLDCO), INC., and GENERICS INTERNATIONAL (US MIDCO), INC.), GENERICS INTERNATIONAL (US), INC., and VINTAGE PHARMACEUTICALS, LLC,.

13.  "Effective Date" means the fifth business day after which all of the following events have occurred:

    a.  Plaintiff and Defendants have executed this Agreement;

    b.  The Court has entered the Final Approval Order;

    c.  Defendants have made payments totaling $15,500,000.00 to the Escrow Account to complete the funding of the Settlement Fund as set forth in this Agreement; and

    d.  The time for seeking rehearing or appellate or other review has expired, and no appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or *certiorari* could be taken has expired.

14.  "Escrow Account" means the account to be established consistent with the terms and conditions described in Section X hereof.

15.  "Escrow Agent" means AB Data, 600 A.B. Data Drive, Milwaukee, WI 53217.  Class Counsel and Defendants may, by agreement, substitute a different organization as Escrow Agent, subject to approval by the Court if the Court has previously approved the Settlement, preliminarily or finally.  In the absence of agreement, either Class Counsel or Defendants may move the Court to substitute a different organization as Escrow Agent,

upon a showing that the responsibilities of Escrow Agent have not been adequately executed by the incumbent. The Escrow Agent shall administer the Escrow Account.

16. "Final Approval" means the date that the Court enters an order and judgment granting final approval to the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of the Service Award to Plaintiff. In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date the Court enters the last of such orders.

17. "Final Approval Hearing" means the hearing set pursuant to Section IX hereof.

18. "Final Approval Order" means the order and judgment that the Court enters upon Final Approval. In the event that the Court issues separate orders addressing the matters constituting Final Approval, then Final Approval Order includes all such orders.

19. "Multi-Vitamin With Fluoride Tablets" means all chewable multi-vitamin tablets with fluoride sold by Defendants or branded "Qualitest Pharmaceuticals," "Vintage Pharmaceuticals," or "Physicians Total Care" in dosages of 1.0 mg, 0.5 mg, or 0.25 mg, including but not limited to the products sold under NDC numbers:

> 00254-4378-21
> 00254-4378-28
> 00254-4379-21
> 00254-4379-28
> 00254-4380-21
> 00254-4380-28
> 00603-4381-21
> 00603-4381-28
> 00603-4382-21
> 00603-4382-28
> 00603-4383-21
> 00603-4383-28
> 00603-4710-21
> 00603-4710-32
> 00603-4711-21
> 00603-4711-32

00603-4712-21
00603-4712-32
00603-4713-21
00603-4714-21
00603-4715-21
00603-6300-21

20.    "Notice" means the notices of proposed class action settlement that the Plaintiff will ask the Court to approve in connection with the motion for preliminary approval of the Settlement.  "Notice Program" means the methods provided for in this Agreement for giving the Notice.   Additional description of the contemplated Notice Program is provided in Section VIII hereof.

21.    "Notice Administrator" means AB Data.  Class Counsel and Defendants may, by mutual agreement in writing, substitute a different organization as Notice Administrator, subject to approval by the Court if the Court has previously approved the Settlement preliminarily or finally.   In the absence of such agreement, either Class Counsel, or Defendants, may move the Court to substitute a different organization as Notice Administrator, upon a showing that the responsibilities of Notice Administrator have not been adequately executed by the incumbent.

22.    "Opt-Out Period" means the period that begins the day after the earliest date on which the Notice is first mailed or published, and that ends on the date set by the Court.

23.    "Parties" means Plaintiff and Defendants.

24.    "Plaintiff" means Shannon Mahoney.

25.    "Preliminary Approval" means the date that the Court enters an order preliminarily approving the Settlement in the form jointly agreed upon by the Parties.

26.    "Released Claims" means all claims to be released as specified in Section XIV hereof.

27.    "Releases" means all of the releases contained in Section XIV hereof.

28.   "Released Parties" means those persons released as specified in Section XIV hereof.

29.   "Releasing Parties" means Plaintiff and all Settlement Class Members who do not timely opt out of the Settlement, Defendants, and each of their respective heirs, assigns, and successors, as set forth in Section XIV hereof.

30.   "Settlement" means the settlement into which the Parties have entered to resolve the Action. The terms of the Settlement are as set forth in this Agreement and in the separate letter and its attachment referenced in ¶ 71 below.

31.   "Settlement Administrator" means AB Data. Class Counsel and Defendants may, by mutual agreement in writing, substitute a different organization as Settlement Administrator, subject to approval by the Court if the Court has previously approved the Settlement preliminarily or finally. In the absence of such agreement, either Class Counsel or Defendants may move the Court to substitute a different organization as Settlement Administrator, upon a showing that the responsibilities of Settlement Administrator have not been adequately executed by the incumbent.

32.   "Settlement Class" and "Class" mean all persons and entities who paid for Multi-Vitamin With Fluoride Tablets between October 31, 2007, and December 31, 2015, excluding: (a) government entities who were parties to the settlement in *United States v. Vintage Pharmaceuticals, LLC, et al.*, Case No. 13 civ. 1506 (DLC), (b) Defendants and their officers, directors, agents and employees, and (c) all persons and entities that acquired Multi-Vitamin With Fluoride Tablets for sale to others.

33.   "Settlement Class Member" means any person or entity included in the Settlement Class.

34.   "Settlement Fund" means the common fund established under Section X hereof.

35.     "Settlement Website" means the website that the Settlement Administrator will establish following Preliminary Approval as a means for Settlement Class Members to obtain notice of and information about the Settlement.

## III.    Certification of the Settlement Class

36.     For purposes of this Settlement Agreement only, Plaintiff will seek, and Defendants agree to not oppose, certification of the following "Settlement Class" under Rule 23(b)(3) of the Federal Rules of Civil Procedure:

> All persons and entities who paid for Multi-Vitamin With Fluoride Tablets between October 31, 2007, and December 31, 2015, excluding (a) government entities who were parties to the settlement in *United States v. Vintage Pharmaceuticals, LLC, et al.*, Case No. 13 civ. 1506 (DLC), (b) Defendants and their officers, directors, agents and employees, and (c) all persons and entities that acquired Multi-Vitamin With Fluoride Tablets for sale to others.

37.     If the Settlement is not approved by the Court, if the Settlement is reversed on appeal, or if the Settlement Agreement becomes ineffective for any reason, Defendants will retain the right to oppose certification of a class for any purpose.  This Settlement may be terminated as specified in Section XVI.

## IV.    Settlement Consideration

38.     Subject to approval by the Court, the total cash consideration to be provided by Defendants pursuant to the Settlement shall be Fifteen Million Five Hundred Thousand and 00/100 Dollars ($15,500,000.00) as cash compensation to the Settlement Class, inclusive of all attorneys' fees, costs and expenses awarded to Class Counsel, and the Service Award.  This payment will hereafter be referred to as the Settlement Fund.

## V.    Settlement Approval

39.     After execution of this Agreement by all Parties, Class Counsel will move the Court for an Order granting preliminary approval of this Settlement ("Preliminary Approval

Order"). The motion for preliminary approval will request that the Court: (1) approve the terms of the Settlement as within the range of fair, adequate and reasonable terms; (2) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 3(b)(3) and (e) for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the procedures set forth in Section VIII and in the Notice Program by which Settlement Class Members may exclude themselves from the Settlement Class or object to the Settlement; (5) appoint as Class Counsel the law firms and attorneys listed in this Settlement as Settlement Class Counsel, and appoint the Plaintiff as representative of the Settlement Class; and (6) schedule a Final Approval hearing for a time and date mutually convenient for the Court and the Parties ("Final Approval Hearing").

40.    Defendants, at their own expense, shall serve or cause to be served a notice of the proposed Settlement, in conformance with the Class Action Fairness Act, 28 U.S.C. § 1715(b).

## VI.    Discovery

41.    Plaintiff and Defendants have engaged in meaningful informal discovery. Defendants will cooperate with Class Counsel by making relevant data available to Class Counsel, their experts, and the Settlement Administrator to facilitate the identification of Settlement Class Members, the provision of notice, and the distribution of the Settlement Fund.

## VII.    Settlement Administrator

42.    The Settlement Administrator shall administer various aspects of the Settlement, as described in the next paragraph, and perform such other functions as are specified for the

Settlement Administrator elsewhere in this Agreement, including but not limited to, providing notice to Settlement Class Members and distributing the Settlement Fund.

43.    The duties of the Settlement Administrator, in addition to the other responsibilities that are described in this Agreement, are as follows:

    a.   Obtain name and address information for Settlement Class Members (to the extent it is available), and verify and update the addresses received, for the purpose of mailing notice to them, and later mailing distribution checks, as appropriate, to Settlement Class Members;

    b.   Establish and maintain the Settlement Website;

    c.   Respond to any mailed Settlement Class Member inquiries;

    d.   Process all requests for exclusion from the Settlement Class;

    e.   Provide a report to the Parties that summarizes the number of requests for exclusion received and other pertinent information;

    f.   At Settlement Class Counsel's request in advance of the Final Approval Hearing, prepare an affidavit to submit to the Court that identifies each Settlement Class Member who timely and properly requested exclusion from the Settlement Class;

    g.   Process and transmit distributions to Settlement Class Members from the Settlement Fund;

    h.   Pay costs approved by the Court; and

    i.   Perform the duties of Escrow Agent as described in this Agreement, and any other Settlement-administration-related function at the instruction of Settlement Class Counsel, including, but not limited to, verifying that Settlement Funds have been distributed as required by Sections XII and XIII hereof.

**VIII.**   **Notice to Settlement Class Members**

44.   Upon Preliminary Approval of the Settlement, at the direction of Class Counsel, the Notice Administrator shall implement the notice program approved by the Court, using the forms of notice approved by the Court.

45.   The Notice shall include a procedure for Settlement Class Members to opt out of the Settlement Class. A Settlement Class Member may opt out of the Settlement Class at any time during the Opt-Out Period. Any Settlement Class Member who does not timely and validly request to opt out shall be bound by the terms of this Agreement upon final approval of it by the Court.

46.   The Notice also shall include a procedure for Settlement Class Members to object to the Settlement or any aspect of it. Objections to the Settlement must be mailed to the Clerk of the Court, Class Counsel, and Defendants' counsel. For an objection to be considered by the Court, the objection must be received by the Court on or before the last day of the Opt-Out period, as specified in the Notice.

47.   For an objection to be considered by the Court, the objection must also set forth (subject to approval by the Court):

   a.   the name of the Action;

   b.   the objector's full name, address and telephone number;

   c.   an explanation of the basis upon which the objector claims to be a Settlement Class Member;

   d.   all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;

e.  the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

f.  the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g.  the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

h.  any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

i.  the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

j.  a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection;

k.  a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

l.     the objector's signature (an attorney's signature is not sufficient).

48.     Notice shall be provided to Settlement Class Members by any of Mailed Notice; Published Notice; or Long-Form Notice (as those terms as used in the Motion for Preliminary Approval) on the Settlement Website.  Not all Settlement Class Members will receive all forms of notice, and the form used will depend in part on the information available, all subject to Court approval.

49.     Within ten days after the conclusion of the Opt Out Period, Class Counsel shall provide counsel for the Defendants with a list of each member of the Settlement Class who sought to opt out and shall attach thereto a copy of all documentation submitted by each such member.

50.     Plaintiff and Defendants will work together in good faith to facilitate the Notice Program and to address any issues that arise.

## IX.     **Final Approval Order and Judgment**

51.     The Plaintiff's motion for preliminary approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur.

52.     At or following the Final Approval Hearing, the Court will determine whether to enter final approval of the Settlement.

## X.     **Settlement Fund**

53.     Within 30 days after Preliminary Approval, Defendants will deposit $400,000 into the Escrow Account to fund the initial phase of the Notice Program.  That sum is part of the Settlement Fund.  Should the Notice Administrator require additional funds for notice or settlement administration prior to Final Approval, Plaintiff will confer with Defendants

and Defendants will fund reasonable costs of notice and administration so required. Those payments, if any, will all be part of the Settlement Fund.

54.     In exchange for the mutual promises and covenants in this Agreement, including, without limitation, the Releases as set forth in Section XIV hereof and the dismissal of the Action upon Final Approval, Defendants shall deposit the sum of $15,100,000.00 (reduced by those additional notice and administration costs, if any, paid by Defendants in advance of Final Approval, as set forth in ¶ 53), into the Escrow Account to fully and finally complete the funding of the Settlement Fund within 30 days after Final Approval or on January 15, 2017, whichever is later, and thereafter Defendants shall have no other financial obligations under this Agreement.

55.     Upon the establishment of the Escrow Account, the Escrow Agent may, but shall not be required to, cause the Settlement Funds in the Escrow Account to be invested, in whole or in part, in interest-bearing short-term instruments or accounts that are backed by the full faith and credit of the United States Government or that are fully insured by the United States Government or an agency thereof (the "Instruments").  The Escrow Agent may thereafter re-invest the interest proceeds and the principal as they mature in similar Instruments, bearing in mind the liquidity requirements of the Escrow Account to ensure that it contains sufficient cash available to pay all invoices, taxes, fees, costs and expenses, and other required disbursements, in a timely manner.  Notwithstanding the foregoing, that portion of the Settlement Fund that the Settlement Administrator reasonably estimates needs to be available on a liquid basis to pay on-going costs of settlement administration, as provided in this Agreement, may be placed in one or more insured accounts that may be non-interest-bearing.  Except as otherwise specified herein,

the Instruments at all times will remain in the Escrow Account and under the control of the Escrow Agent. All costs or fees incurred in connection with investment of the Settlement Fund in the Instruments shall be paid out of the investment proceeds or the Settlement Fund.

56.   The Settlement Fund at all times shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l.  All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Settlement Fund or otherwise, including any taxes or tax detriments that may be imposed upon Defendants or their counsel, or Plaintiff or Class Counsel, with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), shall be paid out of the Settlement Fund.  Plaintiff and Class Counsel, and Defendants and their counsel shall have no liability or responsibility for any of the Taxes.  The Settlement Fund shall indemnify and hold Plaintiff and Class Counsel, and Defendants and their counsel harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

57.   The Settlement Fund shall be used for the following purposes, to the extent such purposes are approved by the Court:

    a.   Distribution of payments to the Settlement Class pursuant to Sections XI and XII hereof;

    b.   Payment of the Court-ordered award of Class Counsel's attorneys' fees, costs, and expenses pursuant to Section XV hereof;

c.  Payment of the Court-ordered Service Award to the Plaintiff pursuant to Section XV hereof;

d.  Payment of the costs required to identify Settlement Class Members, provide them notice, administer the settlement, and distribute the Settlement Fund;

e.  Payment of any residual *cy pres* distribution as set forth in Section XIII hereof, together with any administrative costs associated therewith;

f.  Payment of all Taxes, including, without limitation, taxes owed as a result of accrued interest on the Escrow Account; and

g.  Payment of additional fees, costs and expenses not specifically enumerated in subparagraphs (a) through (f) of this paragraph.

## XI.  Calculation of Distributions from Settlement Fund

58.  The calculation and implementation of allocations to Settlement Class Members from the Settlement Fund shall be undertaken by the Settlement Administrator.  The cost of calculation, verification and implementation of the allocations shall be borne by the Settlement Fund as part of the cost of administration of the Settlement.

## XII.  Distribution of Net Settlement Fund

59.  The Net Settlement Fund is equal to the Settlement Fund plus any interest earned from the Instruments, and less the following:

a.  the amount of the Court-awarded attorneys' fees, costs and expenses to Class Counsel;

b.  the amount of the Court-awarded Service Awards to the Plaintiff;

c.  the amount of the costs of Settlement administration, including if necessary tax administration;

    d.  the costs required to identify Class members and provide them notice; and

    e.  all other costs and/or expenses incurred in connection with the Settlement not specifically enumerated in subsections (a) through (d) of this paragraph that are expressly provided for in this Agreement or that are approved by the Court.

60.    The amount of the Net Settlement Fund attributable to uncashed or returned checks sent by the Settlement Administrator shall remain in the Settlement Fund for at least six months from the date that the last distribution check is mailed or payment wired by the Settlement Administrator, during which time the Settlement Administrator shall make a reasonable effort to locate intended recipients of Settlement Funds whose checks were returned and to effectuate delivery of such checks.

## XIII.   Disposition of Residual Funds

61.    Within six months plus 30 days after the date the Settlement Administrator mails or wires the last Settlement Fund payments, unless a later date is agreed among the parties or ordered by the Court, any funds remaining in the Settlement Fund shall be distributed pro rata to those Settlement Class Members who could be located and who received and/or negotiated payment from the Settlement Fund, up to 100% of each valid and allowed claim.

62.    If, for any reason, within one year and 30 days after the date the Settlement Administrator mails or wires the last Settlement Fund payments, unless a later date is agreed among the Parties in writing or ordered by the Court, any funds remain in the Settlement Fund, they will be distributed through a residual *cy pres* program. The residual *cy pres* recipient(s) shall be agreed upon by Class Counsel and Defendants and approved by the Court. All costs associated with the disposition of residual *cy pres* funds shall be paid by the Settlement Fund. In the event no money remains in the Settlement Fund within one year

plus 30 days after the last Settlement Fund Payment is mailed or otherwise distributed (or

such other later date as mutually agreed in writing by the Parties), the Parties shall have

no obligation whatsoever to make any residual *cy pres* distribution.

## XIV.   Releases

63.     As of the Effective Date, Plaintiff and each Settlement Class Member (who does not

timely and properly opt-out of the Settlement), each on behalf of the class member and on

behalf of the class member's respective past or present: officers and directors,

stockholders, legal representatives, trustees, partners, subsidiaries, divisions, heirs,

executors, administrators,   predecessors, assigns, and successors, (collectively, the

"Releasing Parties"), shall be deemed to have fully and irrevocably released and forever

discharged Defendants and each of their present and former parents, subsidiaries,

divisions, affiliates, predecessors, successors and assigns, and the present and former

directors, officers, employees, agents, insurers, shareholders, attorneys, advisors,

consultants, representatives, partners, joint venturers, independent contractors,

wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each

of them, of and from any and all liabilities, rights, claims, actions, causes of action,

demands, damages, costs, attorneys' fees, losses, and remedies, whether known or

unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated,

legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the

conduct, omissions, duties or matters alleged in the Amended Complaint or that arose

from or were made part of this Action or that could have been asserted in this Action.

Further, each of the Releasing Parties agrees and acknowledges that he/she/it shall be

bound by this Agreement, including by the releases contained herein, without regard to

subsequent discovery of different or additional facts or subsequent changes in the law and even if he/she/it does not receive a distribution of funds from the Settlement. In the event that the order approving the Settlement is overturned on appeal, this release will be null and void.

64.   As of the Effective Date, Defendants, on behalf of themselves and on behalf of their present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors, officers, employees, agents, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them, shall be deemed to have fully and irrevocably released and forever discharged the Releasing Parties and each of their respective past or present: officers and directors, stockholders, legal representatives, trustees, partners, subsidiaries, divisions, heirs, executors, administrators, predecessors, assigns, and successors, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters alleged in the Amended Complaint or that arose from or were made part of this Action or that could have been asserted in this Action. Further, Defendants agree and acknowledge that they shall be bound by this Agreement, including by the releases contained herein, without regard to subsequent discovery of different or additional facts and subsequent changes in the law. In the event that order approving the Settlement is overturned on appeal, this release will be null and void.

65.     Without limiting the foregoing, the Releasing Parties expressly and irrevocably waive and release any and all defenses, rights, and benefits they may have in relation to the releases by virtue of the provisions of California Civil Code § 1542 or similar law or rule of any other state or jurisdiction.   California Civil Code § 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

## XV.     Payment of Attorneys' Fees, Costs, and Service Awards

66.     Defendants agree not to oppose Class Counsel's request for attorneys' fees of up to 33% of the Settlement Fund, and agree not to oppose Class Counsel's request for reimbursement of reasonable costs and expenses.   Any award of attorneys' fees, costs, and expenses to Class Counsel shall be payable solely out of the Settlement Fund.   The determination of Class Counsel's request for attorneys' fees shall be based on controlling Second Circuit precedent involving the award of fees in common fund class actions and not based on state law.   The Parties agree that the Court's failure to approve, in whole or in part, any award for attorneys' fees shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination.

67.     Within three business days after the Effective Date, the Escrow Agent shall pay from the Settlement Fund to Class Counsel all Court-approved attorneys' fees, costs, and expenses of Class Counsel, including interest accrued thereon.

68.     Class Counsel will ask the Court to approve a service award of $10,000 for Shannon Mahoney ("Service Award").   The Service Award shall be payable solely out of the Settlement Fund.   The Service Award shall be paid to Plaintiff in addition to Plaintiff's

Settlement Class Member payment.   Defendants agree not to oppose Class Counsel's request for the Service Award.

69.    The Parties negotiated and reached agreement regarding attorneys' fees and costs and the Service Award only after reaching agreement on all other material terms of this Settlement.

**XVI.    Termination of Settlement and Other Events**

70.    This Settlement may be terminated by either Plaintiff or Defendants by serving on counsel for the opposing Party and filing with the Court a written notice of termination within 45 days (or such longer time as may be agreed by the Parties) after any of the following occurrences:

    a.    Plaintiff and Defendants mutually agree to termination;

    b.    the Court rejects or declines to preliminarily or finally approve the Settlement on a basis that affects or relates to a material term of the Settlement Agreement; or

    c.    an appellate court reverses the Final Approval Order, and the Settlement is not reinstated and finally approved without material change by the Court on remand, but the Parties can agree to change and re-submit the Settlement to the Court.

71.    The Parties will ask the Court to approve an opt out form that requests all Class Members who are insurers, third-party payers or other corporate entities that opt out of the Settlement ("Institutional Opt-Outs") to specify the total dollars they paid for Multi-Vitamin With Fluoride Tablets during the Class Period.   Defendants have the right to terminate the Settlement Agreement if the Court approves the requested opt-out form and, after the Opt-Out Period, Institutional Opt-Outs collectively account for more than the amount of dollars of retail purchases of Multi Vitamin With Fluoride Tablets during

the Class Period set forth in the separate letter between the Parties (the "Opt Out Threshold"). Defendants also have the right to terminate the Settlement Agreement if either (1) the Court approves the requested opt out form, but one or more of the Institutional Opt-Outs fails to specify the total dollars they paid for Multi-Vitamin With Fluoride Tablets during the Class Period and the Alternative Opt Out Threshold set forth in the separate letter between the parties is exceeded; or (2) the Court does not approve the requested opt-out form and the Alternative Opt Out Threshold is met, as that event is defined by the separate letter between the Parties. Defendants may exercise their right to terminate the Settlement under this paragraph by serving on counsel for the Plaintiff and filing with the Court a written notice of termination within 45 days (or such longer time as may be agreed among the Parties) after the end of the Opt-Out Period.

## XVII. Effect of a Termination

72.    The grounds upon which this Agreement may be terminated are set forth in section XVI. In the event of a termination as provided therein, this Agreement shall be considered null and void; all of the Parties' obligations under the Settlement shall cease to be of any force and effect; the unspent amounts in the Settlement Fund shall be returned to Defendants; the releases will be null and void; and the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved, including, but not limited to, Plaintiff's right to seek class certification and Defendants' right to oppose class certification, and the Parties will work cooperatively to set a new schedule for the litigation of the Action.

73.  In the event of a termination as provided in section XVI hereof, and after payment of any invoices or other fees or expenses mentioned in this Agreement that have been actually incurred and are due to be paid from the Escrow Account, the Escrow Agent shall return the balance of the Settlement Fund to Defendants.  Defendants shall have no right to seek reimbursement from Plaintiff, the Settlement Administrator, the Escrow Agent, or Class Counsel for any funds properly disbursed from the Escrow Account for any invoices or other fees or expenses pursuant to this Agreement that have been actually incurred and are due to be paid from the Settlement Fund or the Escrow Account.

74.  The Settlement shall become effective on the Effective Date unless earlier terminated in accordance with the provisions of section XVI.

75.  In the event the Settlement is terminated in accordance with the provisions of section XVI, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose, without prejudice to Plaintiff's right to seek class certification and Defendants' right to oppose class certification.  In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made or filed with the Court.

**XVIII. <u>No Admission of Liability</u>**

76.  Defendants dispute the claims alleged in the Action and do not by this Agreement or otherwise admit any liability or wrongdoing of any kind.  Defendants have agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Action.

77.    Class Counsel believe that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly and time-consuming litigation, and the likelihood of success on the merits of the Action.  Class Counsel have fully investigated the facts and law relevant to the merits of the claims, have conducted meaningful informal discovery, and have conducted independent investigation of the allegations in the Amended Complaint.  Class Counsel have concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

78.    The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with the Settlement or this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever.

## XIX.   **Miscellaneous Provisions**

79.    Gender and Plurals.  As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

80.    Binding Effect.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

81.    Cooperation of Parties.  The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to

do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.  This obligation of the Parties to support and complete the Settlement shall remain in full force and effect so long as this Settlement has not been terminated in accordance with its terms, regardless of events that may occur, or court decisions that may be issued in this case or in any other case in any court.

82.  <u>Obligation To Meet And Confer</u>.  Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted.

83.  <u>Integration</u>.  This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

84.  <u>No Conflict Intended</u>.  Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

85.  <u>Governing Law</u>.  Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the State of New York, without regard to the principles thereof regarding choice of law, except to the extent federal law controls the issue in dispute

86.  <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.  Original signatures are not required.  Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

87.     Jurisdiction.  The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement or related in any way thereto that cannot be resolved by negotiation and agreement.  The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement.  The Court shall also retain jurisdiction over all questions and/or disputes related to the notice program, the Settlement Administrator and the Notice Administrator. The Parties agree that any suit, action, proceeding or dispute arising out of or relating to this Agreement shall be decided by the Court alone, and the Parties waive any and all right to trial by jury. As part of their respective agreements to render services in connection with this Settlement, the Settlement Administrator and the Notice Administrator shall consent to the jurisdiction of the Court for this purpose.

88.     Notices.  All notices to Class Counsel provided for herein shall be sent by email and facsimile with a hard copy sent by overnight mail to:

David M. Buckner, Esq.
BUCKNER + MILES
3350 Mary Street
Miami, FL 33133
Telephone: (305) 964-8003
Facsimile:  (786) 523-0485
Email: david@bucknermiles.com

All notices to Defendants provided for herein shall be sent by email and facsimile with a hard copy sent by overnight mail to:

Jonathan Stern, Esq.
ARNOLD & PORTER, LLP
601 Massachusetts Avenue, NW
Washington, D.C. 20001-3743

- 26 -

Telephone: (202) 942-5018
Facsimile: (202) 942-5999
Email: Jonathan.Stern@aporter.com

The notice recipients and addresses designated above may be changed by written notice.
Upon the request of any of the Parties, the Parties agree to promptly provide each other
with copies of objections, requests for exclusion, or other filings received as a result of
the notice program.

89. <u>Modification and Amendment</u>.  This Agreement may be amended or modified only by a
written instrument signed by counsel for Defendants and Class Counsel and, if the
Settlement has been approved preliminarily by the Court, approved by the Court.

90. <u>No Waiver</u>.  The waiver by any Party of any breach of this Agreement by another Party
shall not be deemed or construed as a waiver of any other breach, whether prior,
subsequent, or contemporaneous, of this Agreement.

91. <u>Authority</u>.   Class Counsel (for the Plaintiff), and counsel for Defendants (for
Defendants), represent and warrant that the persons signing this Agreement on behalf of
their clients have full power and authority to bind every person, partnership, corporation
or entity included within the definitions of Plaintiff and Defendants to all terms of this
Agreement.  Any person executing this Agreement in a representative capacity represents
and warrants that he or she is fully authorized to do so and to bind the Party on whose
behalf he or she signs this Agreement to all of the terms and provisions of this
Agreement.

92. <u>Agreement Mutually Prepared</u>.  Neither Defendants nor Plaintiff, nor any of them, shall
be considered to be the drafter of this Agreement or any of its provisions for the purpose

of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

93.    Independent Investigation and Decision to Settle.    The Parties understand and acknowledge that:    (a) they have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement.   It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

94.    Receipt of Advice of Counsel.    Each Party acknowledges, agrees, and specifically warrants that he, she or it has fully read this Agreement and the Releases contained in Section XIV hereof, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

Dated: _____10/19/16_____                    _____Shannon Mahoney_____
                                             Shannon Mahoney
                                             Plaintiff

Dated: _10/20/2016_

David M. Buckner, Esq.
BUCKNER + MILES
3350 Mary Street
Miami, Florida 33133
*Class Counsel*

Dated: _10/21/16_

Robert C. Glass

*for* Ryon McCabe, Esq.
McCABE RABIN, P.A.
1601 Forum Place, Suite 505
West Palm Beach, FL 33401
*Class Counsel*

Dated: _10/19/2016_

ENDO HEALTH SOLUTIONS INC.,
*Defendant*

Dated: _10/19/2016_

ENDO PHARMACEUTICALS INC.,
*Defendant*

Dated: _10/19/2016_

GENERICS INTERNATIONAL (US PARENT),
INC. (sued as GENERICS INTERNATIONAL
(US PARENT), INC., d/b/a Qualitest
Pharmaceuticals, GENERICS BIDCO I, LLC,
GENERICS BIDCO II, LLC, GENERICS
INTERNATIONAL (US HOLDCO), INC., and
GENERICS INTERNATIONAL (US MIDCO),
INC.)
*Defendant*

Dated: _10 / 19 / 2016_          _____

GENERICS INTERNATIONAL (US), INC.,
*Defendant*


Dated: _10 / 19 / 2016_          _____

VINTAGE PHARMACEUTICALS, LLC
*Defendant*


Dated: _____          _____

Jonathan Stern, Esq.
ARNOLD & PORTER, LLP
601 Massachusetts Avenue, NW
Washington, D.C. 20001-3743
*Counsel for Defendants*

Dated: _____        _____
                                       GENERICS INTERNATIONAL (US), INC.,
                                       *Defendant*


Dated: _____        _____
                                       VINTAGE PHARMACEUTICALS, LLC
                                       *Defendant*


Dated: _____        _____
                                       Jonathan Stern, Esq.
                                       ARNOLD & PORTER, LLP
                                       601 Massachusetts Avenue, NW
                                       Washington, D.C. 20001-3743
                                       *Counsel for Defendants*