UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
CASE NO. 15-cv-09841-DLC

SHANNON MAHONEY, individually and
on behalf of herself and all others similarly
situated,

    Plaintiff,

v.                                                                      CLASS ACTION

ENDO HEALTH SOLUTIONS, INC., a Delaware
corporation; ENDO PHARMACEUTICALS, INC.,
a Delaware corporation; GENERICS INTERNATIONAL
(US PARENT), INC., a Delaware corporation
d/b/a Qualitest Pharmaceuticals; GENERICS
INTERNATIONAL (US), INC., a Delaware corporation;
GENERICS BIDCO I, LLC, a Delaware limited liability
company; GENERICS BIDCO II, LLC, a Delaware
limited liability company; GENERICS INTERNATIONAL
(US HOLDCO), INC., a Delaware corporation;
GENERICS INTERNATIONAL (US MIDCO), INC.,
a Delaware corporation; and VINTAGE
PHARMACEUTICALS, LLC, a Delaware
limited liability company,

    Defendants.
_____/

**THE CLASS' UNOPPOSED MOTION FOR SECOND DISTRIBUTION
AND MOTION FOR ADDITIONAL ATTORNEYS' FEES**

At the time of granting final approval of the class settlement in this case, the Court acknowledged that Class Counsel had obtained a substantial settlement in the face of significant risks, and that the Court was impressed with the quality of the representation rendered here. Class Counsel has since expended significant additional attorney resources to distribute the $10 million earmarked to the Class members in the face of unusual and unanticipated challenges, while still saving approximately 18% of the originally-estimated administration costs.  The Class therefore

1

now moves for permission to make a second distribution of unclaimed funds, and moves for an award to Class Counsel of the remaining attorneys' fees sought in Plaintiff's original request.

## I. BACKGROUND

Plaintiff alleged that the Defendants manufactured certain tablets that purported to deliver precise dosages of fluoride ion, when in fact the tablets delivered less than one-half of the amount claimed on the label. After more than a year of hard-fought litigation and hundreds of hours of intense settlement negotiations, Class Counsel obtained a settlement that consisted of a $15.5 million common fund that provided immediate benefits to the Class without further risks, delays, or litigation costs. Through an extensive and multi-faceted notice program, Class Counsel identified over 90% of the potential class members, including over 800 third parties that paid claims for the tablets. Of the approximately 1,462,079 identified class members, only 22 opted out. Moreover, there were no objectors to the settlement.

At the time of final approval of the settlement, Class Counsel requested a fee award of $4,650,000, representing 30% of the common fund. The Court acknowledged that it was very impressed with the quality of Class Counsel's work and that Class Counsel strongly represented the Class' interests, particularly in connection with identification and distribution to the class. (Transcript of Proceedings, June 16, 2017, at 38:12-13, 45:9-11)(attached hereto as Exhibit A) (hereafter "Trans."). The Court's Order Granting Final Approval of the Settlement Between the Class and the Defendants awarded class counsel $3,400,000, which represented only 22% of the fund. [*See* DE#104]. However, the Court specifically noted that Class Counsel could file a motion for additional fees at a later date. *Id.* at 4.

Class Counsel, through the Claims Administrator, distributed the $10 million to the Class as the Court instructed. The net result has been 389,214 payments to, and redemptions totaling

$7,326,518.89 by, Class members. (*See* Declaration of Eric Schachter ("Schachter Dec.), ¶6)(attached hereto as Exhibit B). This has been a significant undertaking. Specifically, during the distribution process, numerous third-party payers attempted to use statistical sampling to recover their *pro rata* shares of the common fund, rather than comply with the method set forth in the Court's order. (*Id.* ¶10). Class Counsel was therefore compelled to devote significant additional attorney time and firm resources to resolve these claims. In addition, various forms of sophisticated attempted fraud were detected during the initial distribution, such as:

- Checks being presented for payment via two different methods (*i.e.* deposit by phone and then at a bank or check cashing facility).

- Checks being photocopied and simultaneously presented for payment via two different methods (*i.e.* at a bank and at a check cashing facility).

- Check payee and/or amounts being doctored and presented for payment.

- Check name and/or amounts being doctored and then passed off as quasi-payment for unrelated matters.

- Counterfeit checks being created including the Settlement Fund Account Name/Number but otherwise fabricated information.

(*Id.* ¶11). These attempts to defraud the Fund were prevented (*Id.* ¶12), but again, required Class Counsel's active involvement along with the Claims Administrator and the dedication of significant additional attorney time and firm resources to protect the settlement and to ensure that the class members were not prejudiced. Moreover, by working closely with the Claims Administrator, Class Counsel was able to reduce administrative costs to $1,664,015.71 from the originally-approved estimated maximum of $2,026,275.77, thereby resulting in a savings of $362,260.06. (*See id.* ¶9; Declaration of David Buckner ("Buckner Dec."), ¶6c)(attached hereto as Exhibit C)). In addition, the qualified settlement fund account maintained by Class Counsel has

earned a total of $20,378.98 in interest through August 31, 2018. (*See* Buckner Dec. ¶8). All of those funds remain available.

As of September 6, 2018, $2,673,481.11 remained in the distribution account maintained by the Claims Administrator. (Schachter Dec. ¶¶6, 7). In order to maximize distributions to the Class, the Claims Administrator continues to reissue and re-mail checks to Class Members who request a replacement check. (*Id.* ¶8). These replacement checks are for relatively small amounts (*id.*), and are therefore unlikely to appreciably diminish the funds remaining in the distribution account. The Class therefore seeks approval to make an additional distribution of the funds remaining in the distribution account to those Class members who have already been paid once based upon their claims and who cashed their checks.

The estimated cost to distribute the funds remaining in the distribution account to Class Members who cashed checks for any amount from the first distribution with no minimum threshold payment amount for the second distribution is $298,080.44 to process and send 390,000 payments. (*Id.* ¶13).[1] Of these 390,000 payments, 305,000 of them would be for less than $5. (*Id.*). And 209,000 of those 305,000 payments for less than $5 would be for less than $2. (*Id.*). However, the estimated cost to distribute the funds remaining in the distribution account to Class Members who cashed checks for any amount from the first distribution with a minimum threshold payment amount of $10 in the second distribution is only $74,780.62. (*Id.* ¶14).[2] That is, an additional distribution payment would only be made to those Class members whose payment would be at least $10.

---

[1] This estimate takes into account Class Counsel's request for the remaining attorneys' fees sought in Plaintiff's original request.
[2] Again, this estimate takes into account Class Counsel's request for the remaining attorneys' fees sought in Plaintiff's original request.

A minimum threshold distribution amount of $10 would not only maximize the benefit to the Class by significantly saving on additional administrative costs, but would also substantially increase the expected redemption rate in the second distribution. A considerably lower percentage of checks with a payment amount of less than $10 from the first distribution in this case were cashed than those with payment amounts over $10. (*Id.* ¶15). Specifically, in the first distribution only 42.43% of checks with a payment amount of less than $10 were cashed, whereas the cashed rate for checks with payment amounts over $10 ranged from 71.36% to 88.66%. (*Id.*) Therefore, the Class respectfully requests that the Court approve distribution of the funds remaining in the distribution account maintained by the Claims Administrator to Class members who originally cashed checks from the first distribution and who would receive a minimum threshold amount of $10, and grant Class Counsel an additional $1,250,000 in attorneys' fees, which would recognize Class Counsel's efforts in bringing this case to a successful conclusion and its continuing efforts post final approval and bring the attorneys' fee award to the requested 30%.[3]

## II. ARGUMENT

"[T]he trend of the district courts in this Circuit is to use the percentage of the fund approach to calculate attorneys' fees." *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 431 (S.D.N.Y. 2001); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 484 (S.D.N.Y. 1998) ("[There is strong support for the percentage approach from district courts in this Circuit."). This is because courts "increasingly have come to recognize the shortcomings of the lodestar/multiplier method as a universal rule for compensation." *In re Sumitomo Copper Litig.*, 74 F.Supp.2d 393, 397 (S.D.N.Y. 1999). "In contrast [to the percentage method], the

---

[3] The Court's Order Granting Final Approval of the Settlement Between the Class and the Defendants already approved a total up to $2,026,275.77 in claims administration expenses. The additional costs required to make the second distribution the Class is requesting will keep the total administrative costs well below the previously-approved maximum. Therefore, it is not necessary for the Court to approve additional administration costs.

lodestar creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)396 F.3d at 121; *In re Presidential Life Secs.*, 857 F.Supp. 331, 334 (S.D.N.Y. 1994) ("Problems encountered in evaluation of fees utilizing the lodestar approach . . . have led to rejection of that method in common fund cases . . . and express approval of the percentage method as an acceptable alternative."). Courts thus routinely adopt a percentage of the fund in awarding attorneys' fees since it "better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 991 F.Supp.2d 437, 440 (E.D.N.Y. 2014), *overturned on other grounds by In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016). Furthermore, while not required, courts can use a lodestar cross-check to assure that the percentage-based fee is reasonable. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).[4]

Courts in this district have also concluded that, where attorneys' fees are awarded as a percentage of the fund, the amount of an attorneys' fees award should scale back as the size of the fund increases. *In re Payment Card Interchange Fee,* 991 F. Supp. 2d at 443-444; *In re Colgate-Palmolive Co. ERISA Litig.,* 36 F. Supp. 3d 344, 349 (S.D.N.Y. 2014). This approach "avoid[s] routine windfalls where the recovered fund runs into the multi-millions." *Precision Assocs., Inc.*

---

[4] Under the lodestar method, "the 'lodestar' is calculated by multiplying the number of hours reasonably expended by the prevailing rates for the services provided, the rate 'normally charged for similar work by attorneys of like skill in the area,' taking into account factors such as the experience of the attorney performing the work and the type of work performed*." In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (*quoting City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir. 1977*), abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Once the lodestar is calculated, an enhancement or multiplier should be determined. *In re NASDAQ Market-Makers*, 187 F.R.D. at 489.

*v. Panalpina World Transp. (Holding) Ltd.*, No. 08 Civ. 42 (JG), 2013 WL 4525323, at *16 (E.D.N.Y. Aug. 27, 2013); *see also In re Interpublic Sec. Litig.,* No. 02-CIV-6527, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004) (In order to "avoid routine windfalls where the recovered funds runs into the multi-millions, . . . courts typically decrease the percentage of the fee as the size of the fund increases."). Applying this rationale, courts in this Circuit have used graduated scales in awarding attorneys' fees, which "permits a more reasoned and transparent calculation of the lawyers' fee based on comparison to other cases." *In re Payment Card Interchange Fee,* 991 F. Supp. 2d at 445. Accordingly, courts in this Circuit have adopted a table that awards fees of 33% on recoveries up to $10 million and 30% on recoveries between $10 million and $50 million, with decreasing percentage amounts on larger recoveries. *See In re Payment Card Interchange Fee,* 991 F. Supp. 2d at 445; *see also In re IndyMac Mortgage-Backed Secs. Litig.*, 94 F. Supp. 3d 517, 523 (S.D.N.Y. 2015) (citing various studies regarding class action settlements and attorneys' fees and recognizing sliding scale set by the Court's experience); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) ("it supports class counsel's request for one-third of the fund because "'reasonable, paying clients[s]' . . . typically pay one-third of their recoveries under private retainer agreements")(*quoting Reyes v. Altamarea Group, LLC*, No. 10-CV-6451, 2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011) (*quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 522 F.3d 182, 191 (2d Cir. 2008).

At the hearing on the motion for final approval of the settlement in this case, the Court acknowledged the high quality of Class Counsel's representation, and their creative advocacy and work in connection with identification of and distribution to the class. (Trans. at 38:12-13; 45:9-11). As the Court also acknowledged at that hearing, Class Counsel faced significant risks in this case, particularly with regard to establishing damages and maintaining a nationwide class based

7

on fraud allegations. (*Id.* at 13:20-23; 33:22-24; 45:5-8). Class Counsel nevertheless negotiated an outstanding settlement for the class in the early stages of the litigation, which is precisely the benefit to consumers that the policy considerations underlying fee awards based on a percentage of the fund seek to advance. *See In re Payment Card Interchange Fee*, 991 F.Supp.2d at 440 (a percentage of the fund "better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients"). The Court also acknowledged that the reaction of the Class to the settlement was extremely positive, as evidenced by the fact that there were no objections even though many class members were sophisticated entities who were in a unique position to evaluate its terms. (Trans., pp.27:17-22). In addition, the Court found that Class Counsel structured the case in an efficient and appropriate manner, and stated that the time and labor expended by counsel was reflected in Class Counsel's loadstar calculations. (*Id.* at 44:19-24; *see also id.* at 35:17-36:18).

Under the sliding scale for percentage awards used by courts in this Circuit, Class Counsel could have requested 33% of the fund up to $10 million. *In re Payment Card Interchange Fee*, 991 F.Supp.2d at 445. However, Class Counsel limited its total fee request to 30%. Class Counsel's 30% fee request represented a loadstar multiplier of 3.15 that was within, if not below, the range accepted by courts in this Circuit.[5] In addition, as set forth above, since the Court entered

---

[5] *See, e.g., In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) (lodestar multiplier "of just over 6"); *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 991 F.Supp.2d 437, 448 (E.D.N.Y. 2014) (multiplier of "about 3.41"); *Athale v. Sinotech Energy Ltd.*, 2013 WL 11310685 (S.D.N.Y. Sept. 4, 2013) (20% fee award with 5.65 multiplier); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers"); *In re WorldCom, Inc. Sec. Litig.*, 388 F.Supp.2d 319 (S.D.N.Y. 2005) (4.0 multiplier); *Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 371 (S.D.N.Y. 2002) (33.3% fee, resulting in "modest multiplier of 4.65"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) ("The percentage fee award in this case represents a multiplier of approximately 3.97 times Class Counsel's lodestar of $36,191,751. A multiplier of 3.97 is not unreasonable in this type of case."); *Roberts v. Texaco, Inc.*, 979 F.Supp. 185, 198 (S.D.N.Y. 1997) (5.5 multiplier); *In re RJR Nabisco, Inc. Secs. Litig.* 1992 WL 210138, at *5-8 (S.D.N.Y. Aug. 24, 1992) (awarding a percentage-based fee representing 6 times loadstar); *Rabin v. Concord Assets Grp., Inc.*, 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (awarding 4.4 multiplier and explaining that "multipliers of between 3 and 4.5 have been

its order granting approval of the settlement, Class Counsel has had to contend with unusual challenges in the distribution process, including a variety of sophisticated attempted frauds. These were not routine processing matters. Instead, they required the continued exercise of Class Counsel's professional skill, as part of its on-going commitment to the Class. Moreover, Class Counsel continued to maximize efficiency in the distribution process, thereby reducing administrative costs by $362,260.06 from the original estimate. Those funds are also available. The Court's Order Granting Final Approval of the Settlement Between the Class and the Defendants anticipated all of this, and provided that Class Counsel could file a motion for the remainder of the fees originally sought. [*See* DE#104 at 4]. The Class respectfully so moves.

At this juncture, the benefit to the class will be maximized by a second distribution to those class members who would receive a minimum threshold amount of $10 or more. Such a distribution will keep additional administration costs to a minimum and will significantly increase the redemption rate of payments made in the second distribution.

### III.   CONCLUSION

Based on the foregoing, the Class respectfully requests that the Court grant Class Counsel an additional $1,250,000 in attorneys' fees, a significant part of which will be provided by savings obtained by closely managing the administrative costs in this case, bringing total fees to 30% of the common fund, and approve distribution of the funds remaining to Class members who originally cashed checks from the first distribution and who would receive a minimum threshold amount of $10 in the second distribution.

---

common") (internal quotation marks and citation omitted); *see also Weiss v. Mercedes-Benz of N. Am.*, 899 F.Supp. 1297 (D.N.J. 1995) (9.3 multiplier), *aff'd*, 66 F.3d 314 (3d Cir. 1995).

## **CERTIFICATE OF CONFERRAL**

Undersigned counsel certifies that counsel for the Class has conferred with counsel for Defendant and Defendant does not oppose the relief sought herein.

Dated:  September 27, 2018           Respectfully submitted,

/s/ David M. Buckner
David M. Buckner
S.D.N.Y. Bar Code:  db6055
david@bucknermiles.com
Brett E. von Borke
S.D.N.Y. Bar Code: bb4480
vonborke@bucknermiles.com
Seth Miles
*Admitted Pro Hac Vice*
seth@bucknermiles.com
BUCKNER + MILES
3350 Mary Street
Miami, Florida 33133
Tel: 305-964-8003
Fax:  786-523-0485

Ryon M. McCabe
*Admitted Pro Hac Vice*
rmccabe@mccaberabin.com
Robert C. Glass
S.D.N.Y. Bar Code: RG0217
rglass@mccaberabin.com
MCCABE RABIN, P.A.
1601 Forum Place, Suite 505
West Palm Beach, FL 33401
Tel.: 561-659-7878

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 27, 2018, the foregoing document was served via the Court's CM/ECF portal on all counsel of record identified on the attached Service List.

/s/ David M. Buckner
David M. Buckner
S.D.N.Y. Bar Code: db6055
david@bucknermiles.com

**SERVICE LIST**

Shannon Mahoney
v.
Endo Health Solutions, Inc., et al.
U.S. District Court, Southern District of New York
No. 15-09841-CIV-DLC

Ryon M. McCabe
rmccabe@mccaberabin.com
Robert C. Glass
rglass@mccaberabin.com
e-filing@mccaberabin.com
McCabe Rabin, P.A.
1601 Forum Place, Suite 505
West Palm Beach, Florida 33401

*Co-Counsel for Plaintiff*

Ingo W. Sprie, Jr.
ingo.sprie@aporter.com
Benjamin C. Wolverton
Benjamin.wolverton@aporter.com
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022

Jonathan L. Stern
Jonathan.stern@aporter.com
David D. Fauvre
ARNOLD & PORTER LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001

*Attorneys for Defendants*